■ In the Matter of JEANNETTE GG., Respondent, v LAMONT HH. et al., Respondents. ELENA JAFFE TASTENSEN, as Attorney for the Child, Appellant. [909 NYS2d 222]—

Stein, J. Appeal from an order of the Family Court of Schenectady County (Assini, J.), entered June 30, 2009, which dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 5, to, among other things, vacate a prior acknowledgment of paternity.

Shortly after giving birth to Tyra HH. (born in 2004), petitioner signed an acknowledgment of paternity naming respondent Lamont HH. (hereinafter respondent) as the child's father. In 2006, petitioner filed a paternity petition alleging that respondent Alonzo II. was the father of the child. A genetic marker test ordered by a Support Magistrate indicated that there was an approximately 99% probability that Alonzo II. was the child's biological father.[1] Before the genetic marker test results were received, respondent filed a petition for visitation, claiming that he was the biological father of the child. Petitioner then commenced this proceeding, seeking to vacate the acknowl-

**1.** This genetic marker test was ordered after petitioner and Alonzo II. filed paternity petitions in May and July 2006, respectively. On this record, there is no indication that the Support Magistrate knew of the existence of the signed acknowledgment of paternity. The test results were received in October 2006 and Alonzo II. withdrew his petition in April 2007.

edgment of paternity naming respondent as the father on the basis that it was signed under duress. She also incorporated and amended her petition for an order of filiation naming Alonzo II. as the father. After a trial, Family Court dismissed her petition as against Alonzo II. and respondent. The attorney for the child now appeals[2] and we reverse.

Inasmuch as petitioner's challenge to the acknowledgment of paternity was brought more than 60 days after its execution, she bore the burden of establishing that it was signed under duress (*see* Family Ct Act § 516-a [b]; *Matter of Westchester County Dept. of Social Servs. v Robert W.R.*, 25 AD3d 62, 66-67 [2005]). Specifically, petitioner was required to demonstrate " 'that [she] was forced to agree to [sign the acknowledgment] by means of a wrongful threat which precluded the exercise of [her] free will' " (*Matter of Wimberly v Diabo*, 42 AD3d 599, 600 [2007], quoting *Matter of Podmore v Our Lady of Victory Infant Home*, 82 AD2d 48, 50 [1981]; *see* Family Ct Act § 516-a [b]). It is not necessary that petitioner demonstrate that the threat was of immediate harm, so long as respondent acted in a way that "deprived [her] of the ability to act in furtherance of [her] own interests or the ability to exercise . . . free will" (*Morand v Morand*, 2 AD3d 913, 914 [2003] [internal quotation marks and citation omitted]).

Here, prior to trial, petitioner's assigned counsel moved, ex parte, for authorization to retain a domestic violence expert and present expert testimony at trial, in support of petitioner's assertion that the history of repeated domestic violence by respondent toward petitioner overcame her free will when she signed the acknowledgment of paternity. Family Court postponed a determination of that application pending trial on the ground that it was necessary for petitioner to first lay a foundation at trial for the propriety of such testimony. At trial, petitioner testified regarding the years of ongoing physical, financial and emotional/psychological abuse she endured from respondent throughout their approximately four-year relationship. For example, petitioner testified about specific incidents in which respondent burned her with cigarettes, dragged her across the floor and forced her to have sex with him. Petitioner also related how respondent forced her to give him her earnings, prevented her from talking to and visiting with friends and, after she ended their relationship, broke into her house.

Petitioner further testified that respondent and members of his family accompanied her to the hospital when she went to

---

**2.** Although petitioner did not file a separate notice of appeal, she has submitted a brief which supports the position of the attorney for the child.

deliver Tyra and that, after the child was born, respondent became angry and raised his voice at a nurse when he learned that the birth certificate listed the child as having petitioner's surname instead of his. Three days after the child was born by cesarean section, while petitioner was still on various pain medications, respondent insisted that petitioner go to the nurses' station and sign a paternity acknowledgment form, which was already filled out, indicating that respondent was the father of the child. While one nurse in the vicinity who witnessed the signing gave her minimal instruction (which allegedly did not comply with Public Health Law § 4135 [1] [b]) and petitioner understood that she was signing an acknowledgment of paternity at the time, she testified that she believed it could be changed at a later date. Read as a whole, petitioner's testimony clearly indicates that her acquiescence to respondent's requests was a result of her fear of his anger and future violence based on her past experiences with him. Respondent did not testify at the hearing or present the testimony of any other witnesses to controvert petitioner's testimony.

Although Family Court ultimately found that petitioner was a victim of domestic violence, it denied her request for expert testimony because it did not "think that there's been anything that's risen to the level . . . [of] a pattern of domestic violence . . . that would require an expert." We disagree. Upon our review of the record, we conclude that petitioner's uncontroverted testimony was sufficient to warrant expert testimony as to the effect of domestic violence on her ability to exercise free will in connection with her execution of the acknowledgment of paternity, as such testimony would "help to clarify an issue calling for professional or technical knowledge, possessed by the expert" (*De Long v County of Erie*, 60 NY2d 296, 307 [1983]). While we can infer from Family Court's decision to dismiss the petition seeking vacatur of the acknowledgment of paternity that the court found that petitioner had not met her burden of proof on the issue of duress, it made no explicit determination regarding petitioner's duress claim. Nor did the court indicate that it found petitioner's credibility to be questionable with regard to her testimony concerning the alleged incidents of domestic violence. Instead, Family Court's decision is based on an equitable estoppel and/or best interests analysis (*see generally Matter of Dustin G. v Melissa I.*, 69 AD3d 1019, 1019-1020 [2010], *lv denied* 14 NY3d 708 [2010]; *Matter of Savel v Shields*, 58 AD3d 1083, 1084 [2009]). Absent a finding of duress to warrant vacatur of the acknowledgment of paternity, any determinations with regard to equitable estoppel and/or the best interests of the child would be unnecessary. On the other hand, in the

event a finding of duress was made, the trial court would then be required to determine, based upon appropriate proof, whether petitioner should be equitably estopped from asserting the invalidity of the acknowledgment (*see* Family Ct Act § 516-a [b] [ii]; *see generally Matter of Westchester County Dept. of Social Servs. v Robert W.R.*, 25 AD3d at 71). Here, the record reflects the parties' understanding that the purpose of the hearing was to obtain a determination regarding the issue of duress and, accordingly, that Family Court limited the parties' proof with regard to the issue of equitable estoppel. Thus, this matter must be remitted for a new hearing after affording petitioner an opportunity to present appropriate expert testimony.

Any contention regarding Family Court's refusal to receive certain orders of protection in evidence have been considered and found to be without merit.

Cardona, P.J., Peters, Rose and Malone Jr., JJ., concur. Ordered that the order is reversed, on the law, without costs, and matter remitted to the Family Court of Schenectady County for further proceedings not inconsistent with this Court's decision.