In the Matter of DERRICK H., Appellant, v MARTHA J., Respondent. [922 NYS2d 83]—

A party seeking to challenge an acknowledgment of paternity more that 60 days after its execution must prove that it was signed by reason of fraud, duress, or material mistake of fact (*see* Family Ct Act § 516-a [b] [ii]). If the petitioner meets this burden, the court is required to conduct a further inquiry to determine whether the petitioner should be estopped, in accordance with the child's best interest, from challenging paternity (*see* Family Ct Act § 516-a [b] [ii]; *Matter of Darlene L.-B. v Claudio B.*, 27 AD3d 564 [2006]; *Matter of Westchester County Dept. of Social Servs. v Robert W.R.*, 25 AD3d 62, 72 [2005]). If the court concludes that estoppel is not warranted, the court is required to order genetic marker tests or DNA tests for the determination of the child's paternity, and to vacate the acknowledgment of paternity in the event that the individual who executed the document is not the child's father (*see* Family Ct Act § 516-a [b] [ii]; *Matter of Santos Ernesto R. v Maria S.C.*, 66 AD3d 910 [2009]; *Matter of Darlene L.-B. v Claudio B.*, 27 AD3d 564 [2006]).

Here, as demonstrated by the hearing testimony, the petitioner established that he executed the acknowledgment of paternity based upon a material mistake of fact, as alleged in his petition. The petitioner testified that he executed the acknowledgment because the respondent represented to him that he was the child's biological father, and that he believed this representation because he and the respondent had engaged

in sexual relations during the relevant time period and already had one child together. The petitioner further testified that he later learned, from the respondent's family members, that the respondent had another sexual partner during the relevant period. The respondent did not deny having another sexual partner and, moreover, testified that she had informed the petitioner, before the child was born, that he was not the child's father. The respondent thus effectively admitted her belief that the petitioner is not the child's father, and took the position that the petitioner executed the acknowledgment despite his knowledge of that belief. The Family Court, however, credited the petitioner's testimony that the respondent had told him that he was the child's father, and that he executed the acknowledgment of paternity under that mistaken belief. As this credibility determination is supported by the record (*see generally Matter of Andrew B. [Deborah B.]*, 73 AD3d 1036 [2010]), the record establishes that the petitioner executed the acknowledgment of paternity due to a material mistake of fact (*cf. Matter of Darlene L.-B. v Claudio B.*, 27 AD3d 564 [2006]; *compare Matter of Felton R. v Gloria P.*, 63 AD3d 515 [2009] [petitioner admitted that he signed the acknowledgment of paternity with the knowledge that he was not the child's biological father]).

The Family Court improvidently exercised its discretion in concluding that, nonetheless, the petitioner was estopped from denying his paternity of the child. The purpose of equitable estoppel "is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position" (*Matter of Shondel J. v Mark D.*, 7 NY3d 320, 326 [2006]). Thus, "a man who has held himself out to be the father of a child, so that a parent-child relationship developed between the two, may be estopped from denying paternity," in light of the child's justifiable reliance upon such representations, and the resulting harm that the man's denial of paternity would engender (*id.* at 327; *see Matter of Charles v Charles*, 296 AD2d 547, 548-550 [2002]). "The doctrine in this way protects 'the status interests of a child in an already recognized and operative parent-child relationship' " (*Matter of Juanita A. v Kenneth Mark N.*, 15 NY3d 1, 5 [2010], quoting *Matter of Baby Boy C.*, 84 NY2d 91, 102 n [1994]; *see Matter of Antonio H. v Angelic W.*, 51 AD3d 1022, 1023 [2008]). In all cases, "the doctrine of equitable estoppel will be applied only where its use furthers the best interests of the [subject] child" (*Matter of Charles v Charles*, 296 AD2d at 549; *see Matter of Juanita A. v Kenneth Mark N.*, 15 NY3d at 5; *Matter of Shondel J. v Mark D.*, 7 NY3d at 326).

Here, the hearing evidence demonstrated that no parent-child relationship existed between the petitioner and the subject three-year-old child, who had only limited contact with the petitioner during the first 18 months of her life, and virtually no contact thereafter. There was no evidence that the child " 'would suffer irreparable loss of status, destruction of her family image, or other harm to her physical or emotional well-being if this proceeding were permitted to go forward' " (*Matter of Charles v Charles*, 296 AD2d at 549-550, quoting *Matter of Carol S. v Gerard D.*, 276 AD2d 377, 378 [2000]). Accordingly, under the particular circumstances of this case, we cannot conclude that the ordering of genetic marker or DNA testing for the determination of the child's paternity would be contrary to the best interests of the child (*see* Family Ct Act § 516-a [b] [ii]; *Matter of Gutierrez v Gutierrez-Delgado*, 33 AD3d 1133, 1135 [2006]; *Matter of Walker v Covington*, 287 AD2d 572 [2001]; *cf. Matter of Shondel J. v Mark D.*, 7 NY3d at 328 [child justifiably relied on petitioner's representation that he was her father, "changing her position by forming a bond with him"]; *Matter of Smythe v Worley*, 72 AD3d 977, 979 [2010] [estoppel applicable where parent-child relationship, although limited, had developed over 15 years, such that the child changed his position by forming a bond with the putative father]; *Matter of Sarah S. v James T.*, 299 AD2d 785, 786 [2002]).

Contrary to the contention of the Attorney for the Child, the doctrine of collateral estoppel based upon a prior order of support is also inapplicable under the facts of this case. The order of support, which included provisions pertaining to the subject child and also to a child who was undisputedly the child of the petitioner and the respondent, was rendered upon the petitioner's consent. However, the petitioner, proceeding pro se in the support proceeding, informed the Family Court, prior to issuance of the support order, that he intended to move to vacate the acknowledgment of paternity as to the subject child, and the petitioner, in fact, filed the present vacatur petition the same day. Thus, the support order was rendered ostensibly on his consent, but in the face of his express communication to the Family Court that he disputed the validity of the acknowledgment of paternity. Under the unusual circumstances of this case, the issue of the petitioner's paternity was not actually litigated in connection with the support proceeding; thus, the doctrine of collateral estoppel is inapplicable (*see generally Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 456-457 [1985]; *Matter of Russo v Irwin*, 49 AD3d 1039, 1041 [2008]; *cf. Jeanne M. v Richard G.*, 96 AD2d 549 [1983]; *Matter of Maloney*, 90 AD2d 551 [1982]).

Accordingly, we reverse the order appealed from and remit the matter to the Family Court, Queens County, for a determination of the child's paternity in accordance with Family Court Act § 516-a (b) (ii). Skelos, J.P., Eng, Leventhal and Belen, JJ., concur.